UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 1:10-CR-66 |
| v. | ) |
| | ) Chief Judge Curtis L. Collier |
| TONEY ROBINSON | ) |

**MEMORANDUM OPINION**

Before the Court is a request contained in Defendant Toney Robinson's ("Defendant") sentencing memorandum wherein he asks the Court to declare that the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA" or "Act"), is retroactive so that he does not face the mandatory sentence as provided by 21 U.S.C. § 841(b)(1)(B) prior to the enactment of the FSA. Having the benefit of Defendant's and the Government's arguments and having considered the applicable law, the Court **GRANTS** Defendant's request and holds that the FSA is retroactive and thus Defendant's sentence is governed by the new mandatory minimums set forth in the FSA.

**I.    FACTS**

On August 14, 2009, police officers executed a search warrant on Defendant's residence. In a bedroom they found digital scales, a small amount of crack, a loaded 9 mm handgun, a bag of bullets, and $127. In another bedroom they found a loaded .38 caliber handgun, a 7.62 caliber pistol, and a safe with over $2,000. In a third bedroom they found a large crack cocaine "cookie" drying in front of a fan. Defendant waived his *Miranda* rights and confessed to possession of the firearms, possession of the crack, and to being a felon. The crack in Defendant's possession totaled 21 grams.

On April 13, 2010, Defendant was indicted on three counts: Count One charged Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); Count Two

charged Defendant with possession with the intent to distribute five grams or more of crack cocaine ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and Count Three charged Defendant with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). On July 21, 2010, Defendant pleaded guilty to Counts One and Two.

Pursuant to United States Sentencing Guidelines ("Guidelines") §§ 3D1.2(c) and 1.3(a), Counts One and Two are grouped together, and the offense level applicable to the group is the offense level for the most serious of the two Counts. Here, Count One is the most serious of the two Counts, setting a total offense level of 23 after applicable upward adjustments and the acceptance of responsibility reduction.[1] Defendant has two criminal history points, which establishes a criminal history category of II. As a 23/II offender, Defendant's Guidelines imprisonment range is 51-63 months.

On the date of the offense conduct giving rise to the charges in this case, 21 U.S.C. § 841(b)(1)(B) required "a term of imprisonment which may not be less than 10 years" for individuals, such as Defendant, who possessed 5 grams or more of crack and have a past felony drug conviction. The FSA, however, raised the mandatory minimum threshold from 5 grams to 28 grams. Thus, if sentenced pursuant to the pre-FSA statute, Defendant would face a mandatory minimum sentence of 10 years. If sentenced pursuant to the FSA, however, Defendant would face no mandatory minimum sentence.

Prior to sentencing, Defendant submitted a memorandum arguing he should be sentenced pursuant to the FSA. At the sentencing hearing held on January 13, 2011, the Court ordered the

---

[1]Count Two sets a total offense level of 21 after a dangerous weapon upward adjustment and the acceptance of responsibility reduction.

United States to submit a written response to Defendant's memorandum, and postponed the sentencing hearing for a later date. The United States has since filed a written response brief, and Defendant has filed a reply brief.

## II. Background

On August 3, 2010, President Obama signed into law the Fair Sentencing Act of 2010. The preamble of the FSA states it is "[a]n Act [t]o restore fairness to Federal cocaine sentencing." In large part, the FSA sought to achieve this end by raising the quantities of crack required to trigger various statutory mandatory minimum sentences for crack trafficking. For example, the Act raised the amount of crack required to trigger a 10-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(iii) from 50 grams to 280 grams. Pub. L. No. 111-220, § 2. Likewise, the Act raised the amount of crack required to trigger a 5-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams to 28 grams. Pub. L. No. 111-220, § 2. These new quantity thresholds effectively reduced the statutory "crack-to-powder" sentencing ratio from 100:1 to approximately 18:1.

Additionally, in a section captioned "Emergency Authority for United States Sentencing Commission," the FSA ordered the United States Sentencing Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law," and to do so within 90 days of the FSA's enactment. *Id.* at § 8. Following Congress's mandate, the Commission promulgated amended Guidelines reducing the base offense levels for various quantities of crack cocaine. As the Sentencing Commission explained, these reductions were made "to ensure[] that

the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected throughout the Drug Quantity Table." 75 Fed. Reg. 66,188, 66,191 (October 27, 2010).[2]

The amended Sentencing Guidelines became effective November 1, 2010, and apply to all offenders sentenced after that date, even if those offenders committed their offenses before enactment of the FSA on August 3, 2010. *See* 18 U.S.C. § 3553(a)(4)(ii) (sentencing courts must consider the guidelines that "are in effect on the date the defendant is sentenced"). However, the FSA itself contains no provision declaring whether its liberalized statutory minimums apply to all sentencings going forward, or only to cases involving criminal conduct occurring after August 3, 2010.[3] Hence the dispute presently before this Court. Defendant argues Congress clearly intended the FSA to apply to all sentencings going forward, regardless of the date of offense. The Government argues the FSA's omission of a "retroactivity provision" indicates it is only applicable to criminal conduct occurring after its enactment.

This opinion explains the legal reasoning behind the Court's decision to apply the FSA's new mandatory minimum thresholds to offenders who committed criminal conduct before enactment of

---

[2]For example, under the amended Guidelines 5 grams of crack corresponds to an offense level of 16, with an incarceration range of 21-27 months. However, under the pre-FSA Guidelines 5 grams of crack corresponded to a level 24, with an incarceration range of 51-63 month — a range encompassing the pre-FSA 5-year statutory mandatory minimum for 5 grams of crack.

[3]It appears well-settled (and definitively settled in the Sixth Circuit) that the FSA is not retroactive with respect to offenders who were already sentenced prior to its enactment. *See, e.g., United States v. Carradine*, 621 F.3d 575 (6th Cir. 2010); *United States v. Bell*, 624 F.3d 803 (6th Cir. 2010); *United States v. Brown*, No. 10-1791, 2010 WL 3958760 (8th Cir. Oct. 12, 2010). Unless otherwise indicated, "retroactive" in this opinion refers to the FSA's application to offenders whose criminal conduct occurred before August 3, 2010, but who are sentenced afterwards. It does not refer to the FSA's applicability to those who were already sentenced prior to its enactment.

the FSA, but who are sentenced afterwards.

## III. DISCUSSION

The plain language of the FSA neither compels nor proscribes its retroactive application. *See United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010) ("the [FSA] contains no express statement that it is retroactive nor can we infer any such express intent from its plain language"). The United States argues the absence of such a statement requires the FSA not be applied retroactively. The United States bases this argument in large part upon the general "saving statute" or "saving clause."

At common law, the repeal of a criminal statute, or its re-enactment with different penalties, "abated all prosecutions which had not reached final disposition in the highest court authorized to review them." *Bradley v. United States*, 410 U.S. 605, 607-08 (1973). To abolish the common-law presumption of abatement, Congress enacted its first general savings provision in 1871. *See* c. 71, 16 Stat. 432 (1871); *see also Warden v. Marrero*, 417 U.S. 653, 660 (1974). In 1947, Congress codified the general saving statute at 1 U.S.C. § 109. Section 109 provides, in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

At first blush, the saving statute's requirement an Act "expressly provide" for retroactivity seems to foreclose retroactive application of the FSA. However, the Supreme Court has interpreted the savings statute's effect more modestly than its strong language might seem to indicate. Over one hundred years ago the Supreme Court explained the savings statute "cannot justify a disregard of

5

the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment." *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908); *see also Marrero*, 417 U.S. at 659 n.10 ("only if § 1103(a) can be said by fair implication or expressly to conflict with § 109 would there be reason to hold that § 1103(a) superseded § 109"). In other words, saving statute notwithstanding, Congress has the power to make a statute retroactive without the use of "magical passwords," *see Marcello v. Bonds*, 349 U.S. 302, 310 (1955), so long as it clearly signals its intent some other way. *See Lockhart v. United States*, 546 U.S. 142, 148 (2005) (Scalia, J., concurring) ("We have made clear in other cases as well, that an express-reference or express-statement provision cannot nullify the unambiguous import of a subsequent statute. . . . A subsequent Congress, we have said, may exempt itself from [express statement] requirements by 'fair implication' — that is, *without* an express statement."). Thus, despite no express retroactivity provision in the FSA, if the conclusion Congress intended the Act to apply retroactively arises by fair or necessary implication, the general saving statute is no bar to such application.

In the brief period since the FSA was enacted, a large number of courts have considered whether Congress intended the Act to apply retroactively to offenders who committed crimes prior to FSA's enactment, but have not yet been sentenced. Overwhelmingly, these courts have concluded the necessary implication of the FSA is that Congress intended the Act to apply retroactively. *See, e.g., United States v. Douglas*, No. 09-202-P-H, 2010 WL 4260221 (D. Me. Oct. 27, 2010); *United States v. Gillam*, No. 1:10-CR-181-2, 2010 WL 4906283 (W.D. Mich. Dec. 3, 2010); *United States v Jones*, No. 4:10-CR-233 (N.D. Ohio, Jan. 3, 2011); *United States v. Cox*, No. 3:10-CR-85-WMC, 2011 WL 92071 (W.D. Wis. Jan. 11, 2011); *United States v. Johnson*, No. 6:08-CR-270 (M.D. Fla. Jan. 4, 2011); *United States v. English*, No. 3:10-CR-53, 2010 WL 5397288 (S.D. Iowa Dec. 30,

6

2010); *United States v. Whitfield*, No. 2:10-CR-13, 2010 WL 5387701 (N.D. Miss. Dec. 21, 2010); *United States v. Holloway*, 3:04-CR-90 (S.D. W. Va. Dec. 20, 2010); *United States v. Johnson*, No. 3:10-CR-138 (E.D. Va. Dec. 7, 2010); *United States v. Favors*, No. 10-CR-384-LY-1 (W.D. Tex. Nov. 23, 2010); *United States v. Spencer*, No. CR 09-00400 JW (N.D. Cal. Nov. 30, 2010); *United States v. Shelby*, No. 2:09-CR-379 (E.D. La. Nov. 10, 2010).[4]

The leading opinion in this growing body of cases is that written by Judge D. Brock Hornby in *Douglas*. Nearly all of the cases cited above draw on Judge Hornby's thorough analysis of the issue, as does this Court. After dispatching the United States's argument the saving statute *ipso facto* applies because the FSA does not contain an express retroactivity provision, the *Douglas* court went on to catalogue the evidence indicating Congress intended the Act to apply retroactively:

> [T]here is no saving clause in the Fair Sentencing Act itself. To the contrary, in this statute Congress expressly granted the Commission emergency Guideline amendment authority, so that the Commission could adopt Guideline amendments effective almost immediately. And in addition, Congress expressly directed the Commission to adopt Guideline amendments "as soon as practicable, and in any event not later than 90 days", i.e., by November 1, 2010. What amendments? To be sure, the new enhancement provisions, but also any changes in the new crack penalty provisions. Where would the latter changes come from? From the new statutory minimum provisions. According to the statutory language, Congress instructed the Commission "pursuant to the emergency authority provided under paragraph (1), [to] make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." The Commission has followed Congress's instructions. Effective November 1, 2010, "the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving

---

[4]To date, the Court is aware of only five district court opinions reaching an opposite conclusion, two of which were penned by the same judge. *See United States v. Santana*, No. 09-CB-1022(KMK), 2011 WL 260744 (S.D. N.Y. Jan. 20, 2011); *United States v. Dickey*, No. 3:09-CR-34, 2011 WL 49585 (W.D. Pa. Jan. 4, 2011); *United States v. Lightfoot*, No. 3:10-CR-42-HEH, 2010 WL 5300890 (E.D. Va. Dec. 22, 2010) (Hudson, J.); *United States v. Crews*, No. 06-CR-418, 2010 WL 5178017 (W.D. Pa. Dec. 20, 2010); *United States v. Holms*, 3:10-CR-110-HEH, 2010 WL 4961657 (E.D. Va. Dec. 1, 2010) (Hudson, J.).

other drugs is consistently and proportionally reflected throughout the Drug Quantity Table." But the new Guidelines cannot be "conforming" and "achieve consistency" (Congress's express mandate) if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010 conduct.

What is more, for years the Sentencing Reform Act of 1984 has directed expressly that the governing Guidelines are those in effect on the day a defendant is sentenced. The Guideline commentary refers to this statutory provision as "Congress's directive to apply the sentencing guidelines in effect at the time of sentencing." Thus, during the past two decades of the Guidelines' existence, whenever the Commission has adopted Guideline amendments, those amendments have applied to all defendants sentenced thereafter, regardless of when the crime was committed. That is what will happen to the new Guidelines' alterations of the base offense levels for various quantities of crack: the new Guidelines will apply to all future sentencings after November 1, 2010, even if the criminal conduct occurred before the Fair Sentencing Act's effective date. Congress "expressly" required that outcome by ordering the emergency amendments within 90 days. Thus, many pre-August 3, 2010 offenders will benefit from the changed crack offense levels, at least if the mandatory minimums do not apply to them. Congress instructed the Commission to make such changes and make them immediately, under an existing statutory structure that makes them apply to those who have already offended but who have not yet been sentenced. It would be a strange definition of "conforming" and "consistency" to have these new amended Guidelines go into effect while the old and therefore inconsistent statutory minimums continue.

Finally, Congress stated that its goal was to "restore fairness to Federal cocaine sentencing." Understandably, Congress might not have wanted a large volume of previously sentenced offenders to be released from prison immediately. But what possible reason could there be to want judges to continue to impose new sentences that are not "fair" over the next five years while the statute of limitations runs? Unlike Marrero, the explicit congressional grant of emergency guideline amendment authority and the mandate of "consistency" and "conforming" amendments, coupled with the express language of the Sentencing Reform Act of 1984 (that the Guidelines in effect on the day of sentencing control irrespective of when offense conduct occurred), unmistakably demonstrate Congress's urgency and expectation of immediate change.

*Douglas*, 2010 WL 4260221, at ** 4-5.

The Court agrees fully with Judge Hornby's analysis in *Douglas*. The context in which the Act was passed, its preamble, and most importantly its "emergency" mandate that the Guidelines

8

be amended to achieve consistency with applicable law, that is, with the FSA, give rise by necessary implication to the conclusion Congress intended the FSA to apply to all offenders sentenced after its enactment.[5]

However, upon concluding Congress intended the FSA to apply to all sentencings going forward regardless of the date of offense, this Court must still consider whether it is bound by controlling precedent not to apply the FSA in this manner. The Court concludes it is not so bound. In *Carradine*, the Sixth Circuit determined a defendant who had been sentenced over two-and-a-half years prior to the FSA's enactment was not entitled to retroactive application of the FSA's new mandatory minimum thresholds. The court held the general saving statute precluded retroactive application of the FSA to the defendant, since the FSA "contains no express statement that it is retroactive nor can we infer any such express intent from its plain language." *Carradine*, 621 F.3d at 580.

*Carradine* is readily distinguishable from the case at bar. Unlike the defendant in *Carradine*, Defendant in this case was not sentenced before enactment of the FSA. Thus, applying the FSA in this case does not entail retroactivity in the sense the court considered and rejected in *Carradine*, that is, retroactivity with respect to a sentence already imposed, or what might be called "full

---

[5]Lending further persuasive weight to this conclusion is the November 17, 2010 letter to Attorney General Eric Holder, written by the FSA's lead sponsors Senators Dick Durbin and Patrick J. Leahy. In the letter, Senators Durbin and Leahy "wholeheartedly agree" with the *Douglas* opinion, and urge General Holder "to apply [the FSA's] modified mandatory minimums to all defendants who have not yet been sentenced, including those whose conduct predates the legislation's enactment." The Senators explain a "sense of urgency" about the amelioration of crack sentencing injustices is what prompted the Act's "emergency" mandate to the Sentencing Commission to amend the Guidelines. They further point out that continuing to sentence defendants for the next five years under a law Congress has determined to be unjust is an "absurd result" Congress did not intend.

9

retroactivity." The Court agrees with the Sixth Circuit that nothing in the text of the FSA gives rise to the necessary implication Congress intended the FSA to be fully retroactive in that sense. However, the Sixth Circuit has not considered or addressed the applicability of the FSA in situations where an offender committed criminal conduct before the FSA's enactment, but is sentenced afterwards. Indeed, no circuit court has yet addressed this issue.[6] It is perfectly possible — in fact, the Court believes it to be the case — that the FSA does not give rise to an inference of full retroactivity of the sort at issue in *Carradine*, but does give rise to an inference of retroactivity of the sort at issue here. Thus, the Court concludes neither the Sixth Circuit's holding in *Carradine* nor any premises necessary to such holding preclude this Court from applying the new mandatory minimum thresholds established by the FSA to all defendants sentenced after August 3, 2010.

## IV. CONCLUSION

For the foregoing reasons, the Court, having concluded Congress clearly intended the FSA's new mandatory minimum thresholds to apply to all defendants sentenced after the FSA's enactment, regardless of the date of offense, **GRANTS** Defendant's request. The Court further concludes the issue of the FSA's application to such defendants is one of first impression in the Sixth Circuit, and is not settled by *Carradine*. Accordingly, the Court will apply the FSA's new mandatory minimum

---

[6]The Government cites eight circuit court cases as supporting its position. However, each of these cases, like *Carradine*, involved a defendant who was sentenced prior to enactment of the FSA. *See United States v. Diaz*, No. 10-317, 2010 WL 5094222 (2d Cir. Dec. 15, 2010); *United States v. Reevey*, No. 10-1812, 2010 WL 5078239 (3d Cir. Dec. 14, 2010); *United States v. Wilson*, No. 10-4160, 2010 WL 4561381 (4th Cir. Nov. 12, 2010); *United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 909 (8th Cir. 2010); *United States v. Hall*, No. 09-10216, 2010 WL 4561363 (9th Cir. Nov. 10, 2010); *United States v. Lewis*, 625 F.3d 1224 (10th Cir. Oct. 29, 2010); *United States v. Gomes*, 621 F.3d 1343 (11th Cir. 2010).

thresholds to Defendant in this case.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**